A reconsideration of this matter on rehearing has convinced us that the conclusion reached in our original opinion is correct. However, there are certain observations contained in that opinion which we believe should be explained and clarified. The facts of the case are fully stated in the original opinion which is reported in 11 So.2d 125.
Upon the submission of the case on rehearing, counsel representing another insurance company appeared as amici curiæ. They have favored us with oral argument and brief in which they contend that the original opinion of this court is incorrect and that the position taken by the defendant insurance company should be maintained.
The ultimate question for decision is whether the stipulation contained in the policy contract, providing that paid-up insurance for a lesser amount will be given to the insured in case of lapse of the policy for non-payment of premiums after it has been in force for three years, is binding upon the insured and his beneficiary and can be enforced under the provisions of Act No. 57 of 1932 which amended section 2 of Act No. 193 of 1906?
All counsel in the case agree that Act No. 193 of 1906 granted to the assured, in the event his policy lapsed for nonpayment of premiums after it had been in force for three years and became non-forfeitable, three remedies, any one of which he was entitled to exercise at his option. These remedies are, viz., (1) a surrender of the policy for payment of its cash value; (2) use of the reserve to extend the full policy for whatever term the reserve shall bring, and (3) use of the reserve to purchase paid-up insurance for a lesser amount. It is also conceded that, under Act No. 193 of 1906 (prior to its amendment) and the settled jurisprudence (see Watson v. Metropolitan Life Insurance Co., 183 La. 25, 162 So. 790), the insurance company is without right to require the insured, by provision in its policy or otherwise, to elect, in advance of a lapse of the policy for non-payment of premiums, which one of the three options he will exercise and that, in the event he does not exercise any one of the three at the date of the lapse, he is automatically entitled to extended insurance.
By Act No. 57 of 1932, which amended section 2 of Act No. 193 of 1906, a change was effected in the law by which the insurance company was relieved of the requirement of applying the accumulated reserve on the policy to carry it in force at its face value on extended insurance. According to that statute, the insurer is given the right, in the event the insured does not exercise any of the three remedies granted him, to apply the reserve either in continuance of the policy at its full amount on extended insurance or of using it to purchase paid-up insurance for a reduced amount. In other words (and this is admitted by counsel for defendant and amici curiæ), the insurer, under Act No. 57 of 1932, is given an option in applying the reserve, which is conditional, however, upon the failure of the insured to exercise any one of the three remedies accorded him by law.
The provision in the policy in the instant case, with regard to non-forfeiture of the insurance, declares:
"After premiums on this Policy have been fully paid for three years or more, then in the event of default of any subsequent premium, this Policy will automatically and immediately on such default be commuted to unconditional, nonforfeitable Paid-up Endowment Insurance upon which no further premiums will be required and which shall be of the amount shown in the following table, * * *"
There is nothing whatever contained in the policy to advise the insured either that it is written under the provisions of Act No. 193 of 1906, as amended, or that any of the non-forfeiture rights accorded him by that statute, in the event of a lapse of the policy for non-payment of premiums, are available. The question to be decided, therefore, is two-fold: (1) Can the insurer, in advance of a lapse of the policy, exercise its right of selection which is conditioned upon the insured's failure to act after the policy has lapsed, and (2) if it has a right to do so, will the insurer's exercise of the conditional option be binding *Page 710 
upon the insured where the policy itself does not, in specific terms, inform him that he has certain rights which are paramount to those of the insurer and which can be exerted by him upon the lapse of the policy?
The answer to these problems is not entirely free from difficulty. In order to reach the correct solution, a clear understanding must be had of the decision of the Supreme Court in Watson v. Metropolitan Life Insurance Company, supra. The theory upon which the Watson decision is based is that it is inimical to the rights granted the insured under the provisions of Act No. 193 of 1906 to require him, by stipulation in the policy or otherwise, to select, in advance of a lapse of the policy for non-payment of premiums, his choice with respect to the application of the reserve which will be available for his use after the policy has been in force for a period of three years and that, upon his failure to select at the time the policy lapses, the 1906 statute requires the insurer to apply the reserve to continue the policy in force on extended insurance. Hence, it is obvious that, were it not for the fact that the amendatory act of 1932 granted to the insurer the secondary or conditional option of applying the reserve in case the insured fails to indicate his choice at the time the policy lapses, the plaintiff would unquestionably be entitled to extended insurance.
As above stated, the 1932 act granted to the insurer a right, or an option, which is conditional and comes into existence only in cases where the insured fails to act. The question, therefore, arises: When can the insurer exercise this conditional option? Can it be exerted by the insurer in advance of the date of lapse, which is the date, according to the decision in the Watson case, upon which the insured's superior right of selection comes into existence? And, what period of time has the insured, after the policy lapses for non-payment of premiums, to select one of the three options accorded him by the statute?
Since the statute is silent in respect of the time in which the insured has to select and since the Supreme Court has held that he cannot be forced to select in advance of a lapse, the answer is that he has a reasonable time within which to make his choice. He certainly cannot unduly delay his selection and thus effectually prevent the insurer from applying the reserve to either paid-up insurance or extended insurance, as it has the right to do under the statute of 1932. But, since the Supreme Court has said in the Watson case that the insurer has no right to force the insured to select in advance of a lapse, does the amendatory act of 1932 give it the right to announce, in advance of a lapse, what option it will select in the event the insured fails to act at the time of lapse or within a reasonable time thereafter?
We can see no real objection to the insurer exercising its tentative or conditional right in advance of a lapse, provided the stipulation in the policy with respect to its choice is worded in such a way that the insured will be clearly advised of the fact that he has been accorded certain primary rights which he may exercise at the time the policy lapses, notwithstanding the selection made by the insurer. For instance, suppose the policy in this case had provided that, in case of its lapse for non-payment of premiums after it had been in force for three years, the insured would have the right to obtain either the cash surrender value or to have the accumulated reserve applied to the purchase of a paid-up policy or to continue the insurance in force for a limited time and that, in the event the insured failed to exercise any one of these three options within a reasonable period of time (say 10 days) from the date of lapse, the insurer would then exercise its conditional option and would apply the reserve to the purchase of a paid-up policy. No sound complaint could be made to this sort of stipulation because, in such case, the insured would be fully advised that, in the event of a lapse for non-payment of premiums after the policy had been in force for three years, he had certain statutory rights which could be exercised by him and that the secondary right of the insurer would be effective only in case he failed to avail himself of these rights within a reasonable time.
But the difficulty with the provisions contained in the policy before us is that the insured is not told of the rights granted him by law. In fact, the only information given him under the stipulation which the defendant seeks to enforce is that, in case the policy lapses for nonpayment of premiums after it has been in force for three years, he will be given a *Page 711 
paid-up policy for a lesser amount. This provision, we believe, is tantamount to a concealment by the insurance company of the rights and privileges vested in the insured by law.
However, amici curiæ and counsel for the defendant postulate that, under Act No. 193 of 1906 as amended by Act No. 57 of 1932, the insurance company was not required to advise the insured of the options given him by the statute and that, while section 1 of the Act provides that policies issued thereunder shall contain the stipulation that they are subject to its provisions relating to non-forfeiture, the only penalty which can be inflicted upon an insurance company for failure to comply with this mandate is that contained in section 3 of the statute, which authorizes the Secretary of State to revoke the company's right to do business in the State. Counsel further argue that the sole purpose the Legislature had in mind in enacting the 1906 statute was to require insurance companies doing business in this State to provide for a reserve which would become non-forfeitable after the insurance had been in force for a period of three years.
We are not wholly in accord with the contentions of counsel with respect to the intent displayed by the Legislature in enacting the 1906 statute. It is, of course, true that the primary purpose of the statute was to require insurance companies to keep reserves and to prevent the forfeiture of such reserves accumulated on policies issued by them after the policies have been in force for three years. But, in addition to this and as a matter germane to this underlying object, the Legislature evidenced an intention on its part to make it certain that the general public thereafter doing business with insurance companies would be informed of the passage of the statute and of the rights accorded thereunder. This is made clear by section 1 of the statute providing that every policy issued after January 1, 1907"shall * * * contain a stipulation that after three full annual premiums have been paid thereon it shall not lapse or become void or be forfeited for non-payment of any premium thereafter, or of any note therefor, or of any loan on such policy, or of any interest on such note or loan, and that it is issued subject tothe provisions of this act relating to non-forfeiture." (Italics ours).
In discussing the above quoted language in the case of Cruze v. Life Insurance Company of Virginia, 184 So. 735, 738, we said:
"It cannot be doubted that the Legislature, in enacting the statute, was aware of the fact that the promulgation of the law would not be sufficient notice to the general public of its existence and that, in reality, many prospective policyholders might never obtain knowledge of the benefits accorded thereunder. Hence, in order to be certain that such a consequence be avoided, it commanded the insurance companies (as the parties primarily affected by the Act) to inform all persons taking out policies after January 1, 1907, by suitable written stipulation, that certain rights under the contracts were to be governed by the Act."
It is true, as pointed out by counsel for the defendant, that the decision in the Cruze case does not completely answer the proposition presented here because, there, we were dealing with the doctrine of "Contra non valentem agere nulla currit praescriptio." But the principle, upon which we there held that the doctrine was applicable and that it suspended the course of the contractual prescription contained in the policy, is similar in theory to the one which we think is controlling here. There, we found that, inasmuch as the insurer had failed to comply with the provisions of section 1 of Act No. 193 of 1906, it had effectually prevented the insured from gaining knowledge of the rights accorded to him by that statute. Likewise, in the present instance, the failure of the insurer to stipulate in the policy contract that it is written subject to the provisions of the statute relating to non-forfeiture has, we think, to a greater extent hindered the insured from being advised of the rights to which he was entitled under the law. We say this because the policy before us provides merely that, in the event of its lapse, the assured can apply for the surrender value or be given a paid-up policy for a lesser amount. The insured is not informed that he is also entitled to extended insurance, if he desires to exercise that option, which type of insurance is, of course, of greater benefit to his beneficiary in case the insured dies during the period that the reserve would be sufficient to carry the full amount of the policy in force. The failure *Page 712 
to advise the insured that he had the right to extended insurance is to be regarded as a technical fraud because it is obvious to us that the stipulation contained in the policy has the effect of lulling him into the belief that, in the event of lapse after three years, he can obtain only a paid-up policy in case he does not wish to accept the surrender value.
The argument of counsel that the sole penalty for the insurer's failure to comply with section 1 of the Act is the revocation of its right to do business in the State, as provided by section 3 of the statute, does not impress us. Conversely, it seems to us that the Legislature in imposing the extreme penalty of forfeiture of the insurer's right to do business in the State in case it violates the Act, discloses a firm intention on its part that the mandate of the statute must be strictly complied with. Besides, we are not imposing a penalty on the insurer. We are merely resolving that the stipulation in its policy, whereby it seeks to enforce a conditional option which can only be effective in the event the assured does not exercise any one of the primary rights granted him under the law, will be regarded as invalid and unenforceable where it appears that the assured has never been advised of his rights and where the stipulation in the contract lulls him, for all practical purposes, into the belief that no such rights exist.
Moreover, we believe that there is another reason why the stipulation contained in the instant policy should not be enforced, in the absence of a provision advising the insured of the superior rights accorded him by the statute. Section 2 of the Act, as amended by Act No. 57 of 1932, after providing in effect that the insured has certain rights which he can demand at the time the policy lapses and that, if he fails to exercise any one of these rights, the insurer has the option of applying the reserve either to the purchase of a paid-up policy or to continue the insurance in force at its full amount for a limited period, declares that "* * * any attempted waiver of the provisions of this paragraph in any application, policy or otherwise, shall be void, * * *".
It seems manifest to us that the insertion of the clause contained in the instant policy, wherein the insurer seeks to exercise its conditional option without advising the insured of his superior rights, is the equivalent to an attempted waiver by it of the provisions of section 2 of the statute. It will not do for the insurer to say that any stipulations contained in the policy which are contrary to the provisions of the Act are written out and that the exercise of its conditional option, in advance of a lapse of the policy, does not effectively withhold from the insured knowledge of his rights, for it is clear to us that the opposite result has been attained by its failure to inform the insured of the options given him under the statute.
In order that the views expressed herein be not misunderstood, we think that it is apt to point out that we are not holding that an insurance company is required to state in its policy that the insured has, after the policy has been in force for three years, three options with respect to the reserve on the policy and set forth those options in detail. It is a sufficient compliance with the statute, if the insurer states in its policy that it was written subject to the provisions of Act No. 193 of 1906, as amended, relating to non-forfeiture and that the policy shall not lapse or become void for non-payment of any premium after three annual premiums have been paid thereon. This is all that the Act requires. However, if the insurer, in advance of a lapse, wishes to take advantage of the option accorded to it by section 2 of the Act, as amended by Act No. 57 of 1932, by stipulating in the policy that it will give to the insured a certain form of insurance, we think that it should be required to advise the insured that he has certain superior rights accorded him by law and that it is only in case he fails, within a reasonable time from the date of lapse, to exercise these rights that the secondary right, or option selected in advance by the insurer, will be effective. The failure of the insurer to so provide renders the exercise of its secondary right null and the beneficiary of the insured, upon discovery of the primary rights vested in the insured, can maintain an action to recover any one of the benefits which would have been available to the insured at the date of lapse.
For the reasons assigned, our original opinion and decree are reinstated herein and made the final judgment of this court. *Page 713